# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IKE AMERICA, LLC | : | |
|     Petitioner, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| KREDIT KARTE, INC., | : | No. 10-3153 |
|     Respondent. | : | |

**MEMORANDUM**

Schiller, J.                                                                                                                                                  September 1, 2010

IKE America, Inc. ("IKE") claims that Kredit Karte, Inc. ("KK") breached the Parties' referral agreement, which contained an arbitration clause. On April 14, 2010, the Parties arbitrated their dispute, and the arbitrator ruled in IKE's favor. IKE filed a petition with this Court to confirm the arbitration award. Subsequently, KK filed a petition to vacate the arbitration award in state court, which IKE removed as part of this case. Currently before the Court is IKE's petition to confirm the arbitration award, KK's petition to vacate the arbitration award, and IKE's motion to dismiss KK's petition to vacate the arbitration award. For the reasons that follow, the Court will confirm the arbitration award.

**I.     BACKGROUND**

On August 8, 2007, IKE and KK signed a referral agreement under which KK agreed to pay referral commissions to IKE for referring merchants to KK for credit card processing services. (Pet. to Confirm Arbitration Award Ex. A [Referral Agreement].) Specifically, IKE was to be paid "Sixty Percent (60%) of the net Residuals received by KK on account, for all Merchant Referrals." (*Id.* ¶ ii.)

The Referral Agreement contains an arbitration clause which provides that any "dispute shall be settled in arbitration in Pennsylvania under the Commercial Arbitration Rules of the American Arbitration Association . . . ." (*Id.* ¶ viii.) On June 8, 2009, IKE filed for arbitration with the American Arbitration Association, alleging that KK breached the referral agreement by failing to pay all of the required referral fees. (Pet. to Confirm Arbitration Award ¶ 9; Resp. to Pet. to Confirm Arbitration Award ¶¶ 19, 22.) The Parties submitted pre-hearing memoranda to the arbitrator outlining their respective arguments. (IKE's Resp. and Mot. for Dismissal of KK's Pet. to Vacate Ex. 3 [IKE's Pre-hr'g Mem.], Ex. 5 [KK's Pre-hr'g Mem.].) The arbitration was conducted on April 14, 2010, afterwards the Parties filed post-hearing memoranda, and an award was rendered on June 1, 2010. (*Id.* Ex. 1 [IKE's FF/CL], Ex. 2 [KK's FF/CL]; Pet. to Confirm Arbitration Award ¶¶ 12, 13.) The award was entered in favor of IKE as follows: (1) $35,336.99 plus 9% interest through April 1, 2010 (which amounts to $2,603.96); (2) continuing 9% interest on $35,336.99 from April 1, 2010; and (3) $54,721.40 plus 9% interest from June 1, 2010. (Pet. to Confirm Arbitration Award Ex. B [Arbitration Award].) KK has refused to pay IKE the amount of the arbitration award. (Resp. to Pet. to Confirm Arbitration Award ¶ 18.)

## II. STANDARD OF REVIEW

A district court must confirm an arbitration award unless the award can be vacated, modified, or corrected as prescribed by the Federal Arbitration Act (FAA). 9 U.S.C. § 9. The FAA provides that a district court may vacate an arbitration award if: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators, or either of them; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon

2

sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[1]  9 U.S.C. § 10.  A district court may modify or correct an arbitration award if: (1) there was evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award; (2) the arbitrators have awarded upon a matter not submitted to them; or (3) the award is impefect in matter of form not affecting the merits of the controversy.  9 U.S.C. § 11.

District courts should vacate arbitration awards only in "exceedingly narrow" circumstances and must apply an "extremely deferential" standard of review.  *Rita's Water Ice Franchise Co. v. Simply Ices, Inc.*, Civ. A. No. 08-2011, 2008 U.S. Dist. LEXIS 77963, at *6 (E.D. Pa. Oct. 3, 2008)

---

[1] The Third Circuit has recognized an additional judicially created reason for vacatur for awards made in "manifest disregard of the law." *Roadway Package Sys. v. Kayser*, 257 F.3d 287, 291 n.2 (3d Cir. 2001).  Recently, however, that decision has been thrown into doubt.  The Supreme Court considered whether parties may agree to supplement the statutory grounds for modification and vacatur to include erroneous legal conclusions and factual findings not supported by substantial evidence. *Hall Street Assoc. v. Mattel, Inc.*, 552 U.S. 576 (2008).  The Supreme Court held that the FAA provides the exclusive grounds for vacatur and modification. *Id*. at 586 ("[T]he text [of the FAA] compels a reading of the §§ 10 and 11 categories as exclusive.").  Courts are now grappling with the import of this holding. *See Prime Therapeutics LLC v. Omnicare, Inc.*, 555 F. Supp. 2d 993, 999 (D. Minn. 2008) ("[D]oes [the decision in *Hall Street*] suggest that courts can no longer vacate an arbitration award based on judicially-created grounds such as 'manifest disregard of the law' . . . [t]his Court believes the answer to that question is yes.").  The Supreme Court expressly declined to resolve the issue. *Stolt-Neilson S.A. v. Animal Feeds Int'l Corp.*, 130 S. Ct. 1758, 1768 n. 3 (2010) (declining to decide whether the "manifest disregard of the law" standard is good law). The Third Circuit has yet to take a position on the issue. *See Paul Green Sch. of Rock Music Franchising, LLC v. Smith*, App. A. No. 09-2718, 2010 WL 2993835 (3d Cir. Aug. 2, 2010).  This Court takes no position on the continued viability of the "manifest disregard of the law" grounds for vacatur subsequent to *Hall Street*.  Even assuming it remains a basis for vacating an arbitration award, Defendant cannot make the requisite showing of a manifest disregard of the law.

3

(quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)). There is a "strong presumption" in favor of the arbitration award. *U.S. Steel Mining Co., L.L.C. v. Wilson Downhole Servs.*, Civ. A. No. 00-1758, 2006 U.S. Dist. LEXIS 72737, at *2 (W.D. Pa. Oct. 5, 2006) (quoting *Mutual Fire, Marine & Inland Reins. Co.*, 868 F.2d 52, 56 (3d Cir. 1989)). Mere disagreement with the arbitrator's decision or a belief that the arbitrator committed a serious error is insufficient to vacate or modify the award. *United Trans. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995). The party seeking vacatur bears the burden of proof. *See Lebeau v. Oppenheimer & Co.*, Civ. A. No. 05-6779, 2006 U.S. Dist. LEXIS 42613, at *5 (E.D. Pa. June 23, 2006).

### III.  DISCUSSION

KK makes two principal arguments in favor of vacating the arbitration award. First, it argues that the arbitration award was improper because IKE's sole shareholder, Corrado Speziali, "is an Italian National," and his immigration status only allows him to collect income from specific sources and not from his position at IKE. (Resp. to Pet. to Confirm Arbitration Award Ex. B [Pet. to Vacate] ¶¶ 6-8, 10, 29-33.) Second, KK argues that the arbitrator exceeded his authority because part of the arbitration award improperly holds KK responsible for the actions of a distinct and separate third party which was not a party to the arbitration. (*Id.* ¶¶ 9-16, 22-28.)

When deciding whether an arbitrator has exceeded his powers, a court must determine if the form of the relief awarded is rationally derived either from the parties' agreement or from their submissions to the arbitrator and whether the terms of the relief are rational. *Southco, Inc. v. Reell Precision Mfg. Corp.*, 556 F. Supp. 2d 505, 511 (E.D. Pa. 2008) (citations omitted). A court must affirm an award unless its terms are "completely irrational." *Id.* The question is whether the

4

arbitrator's interpretation "can in any rational way be derived from the agreement, viewed in the light of its language, its context, and other indicia of the parties' intention." *Id*. (quoting *Exxon Shipping Co. v. Exxon Seaman's Union*, 73 F.3d 1287, 1295 (3d Cir. 1996)).

An arbitrator can exceed his authority by ruling on questions or matters not before him. However, "reaching a particular result based on his view of the contract and the evidence submitted, even if the court might reach a different result from that same evidence, does not mean that the arbitrator exceeded his authority." *Southco*, 556 F. Supp. 2d at 511 (citing *Nat'l Clearing Corp. v. Treff,* Civ. A. No. 04-4765, 2005 WL 67075, *4 (E.D. Pa. Jan. 10, 2005); *Coltec Indus., Inc. v. Elliot Turbocharger Group, Inc.,* Civ. A. No. 99-1400, 1999 WL 695870, *5 (E.D. Pa. Sept. 9, 1999)).

### A. Immigration Status

KK argues that the arbitration award violates public policy because Speziali is an Italian citizen in the United States pursuant to an H1-B Visa, which only allows him to be employed by his authorized employer. *See* 8 C.F.R. § 214.1(e). This argument misses the point. KK argued this theory to the arbitrator in the pre-hearing memorandum and at the hearing. (KK's Pre-hr'g Mem. at 4-5.) The arbitrator considered the issue and decided against KK. This decision is in no way irrational and the arbitrator did not exceed his power in issuing it. IKE argued that Speziali was not in the United States on an H1-B Visa. (IKE's Resp. and Mot. for Dismissal of KK's Pet. to Vacate ¶ 7.) Further, Speziali is not a party to the contract or to the arbitration, and therefore the Court fails to see, and KK failed to advance any viable theory explaining, how his immigration status could possibly affect the validity of an arbitration award between IKE and KK.

### B. Scope of Arbitration

KK also argues that the arbitrator exceeded his authority because part of the arbitration award holds KK responsible for the actions of a third party, Open Network ("ON"). The arbitrator found that:

> Respondent Kredit Karte, Inc. improperly deducted 15% of the net Residuals received on the Robert Cavalli account when calculating the residuals payable to Claimant in connection with the account, and must pay those residuals at the full contract rate of "Sixty Percent (60%) of the net Residuals received" by Respondent Kredit Karte, Inc.

(Arbitration Award.) KK's argument is that the Cavalli account was improperly included in the arbitration because it is not covered under the referral agreement between IKE and KK. Mark Stoss is the president of both KK and ON. (Pet. to Vacate ¶ 3-4.) Both KK and ON have referral agreements with IKE. (*Id.* ¶¶ 9, 16.) KK argued that the Cavalli account was covered under the ON/IKE agreement, and IKE argued that it was covered under the KK/IKE agreement. The argument was made to the arbitrator and IKE prevailed. (IKE's Pre-hr'g Mem. at 6; KK's FF/CL at 1, 4-6; IKE's FF/CL ¶¶ 12-14.) The arbitrator's decision was not irrational, nor did it exceed his power. There is sufficient evidence on the record to rationally conclude that the Cavalli account was covered by the KK/IKE referral agreement, and therefore properly within the scope of the arbitration. Stoss gave the following deposition testimony on the subject:

> A. So, when we did the agreement under Open Network I think, but I'm not sure, I think we did Roberto Cavalli under Open and then I changed Roberto Cavalli from Open to Kredit Karte but I'm not positive on that.

(IKE's Resp. and Mot. for Dismissal of KK's Pet. to Vacate Ex. 6 [Stoss Dep.] at 85.) Also:

> A. Right, in which case he was operating under Open Network's Referral Agreement in theory.
> Q. But it's a contract that ended up going to Kredit Karte?

6

A. Yeah.

(*Id.* at 102.) Additionally, KK's ISO reports have multiple entries for "Roberto Cavalli." (*Id.* Ex. 7 [ISO Reports].) Stoss's deposition testimony, as president of KK, and the ISO Reports provide ample ground to reasonably conclude that the Cavalli account was transferred to KK from ON. Therefore, the arbitrator's decision was rational, and he did not exceed the scope of his authority.

**IV. CONCLUSION**

After reviewing the arbitrator's decision in conjunction with the Parties' agreement and their pre- and post-arbitration submissions, the Court finds the decision to be well-reasoned, appropriately derived from both the written agreement and the Parties' arbitration memoranda, and well within the bounds of rationality. For these reasons, IKE's petition to confirm the arbitration award is granted, KK's petition to vacate the award is denied, and IKE's motion to dismiss KK's petition is denied as moot. An appropriate Order will be docketed separately.